DAVID M. BENNION (5664)
PARSONS BEHLE & LATIMER
Attorneys for Defendant/Counterclaim Plaintiff
Flambeau, Inc.
One Utah Center
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
ecf@parsonsbehle.com

---

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ETAGZ, INC., <br><br>       Plaintiff, <br><br> vs. <br><br> FLAMBEAU, INC., et al, <br><br>       Defendants. | Case No. 2:10CV00240 BSJ <br><br> **FLAMBEAU'S MEMORANDUM OF SUPPORTING AUTHORITIES IN SUPPORT OF FLAMBEAU'S MOTION TO COMPEL RESPONSES TO FLAMBEAU'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS AND SUPPORTING STATEMENT UNDER LR 37-1(B)** |
| FLAMBEAU, INC., <br><br>       Counterclaim Plaintiff, <br><br> vs. <br><br> ETAGZ, INC., <br><br>       Counterclaim Defendant. | Judge Bruce S. Jenkins <br><br> Magistrate Judge David Nuffer |

## I.    __INTRODUCTION__

Defendant Flambeau, Inc., seeks responses to Interrogatory 7 of Flambeau's First Set of Interrogatories and Requests 8, 18 and 19 of Flambeau's First Set of Document Requests. Interrogatory 7, and Requests for Production 8, 18 and 19 seek information related to licenses and settlement agreements that Etagz has negotiated for the patent-in-suit and related patents. This information has repeatedly been found proper in patent cases related to damages issues. Despite repeated efforts to meet and confer to resolve these issues, and despite Flambeau's willingness to limit the scope of these requests to finalized and executed licenses and settlement agreements for the specific patents asserted in this litigation, Etagz has refused to produce **any** responsive documents or information.  With the deadlines for discovery and summary judgment looming, Flambeau cannot wait any longer.  Accordingly, the Court should grant Flambeau's motion and order Etagz to pay the costs and fees associated with bringing it.

## II.    __FACTS__

Flambeau served its First Set of Interrogatories and Document Requests to Etagz on November 7, 2011.  (See Declaration of Michael J. Curley dated August 15, 2012, Exh. A).  This discovery contains Interrogatories and Requests directed to information relevant to a reasonable royalty calculation.  Specifically, Interrogatory No. 7 asks Etagz to identify all licenses, offers to license, settlement agreements and other agreements related to the patents-in-suit, any related patents, and products covered by the patents-in-suit.  (Id., pg. 5).  Request No. 8 asks Etagz to produce all documents related to any licenses for patents Etagz has given.  (Id., Exh. A, pg. 6). Request No. 18 seeks all licenses, settlement agreements, covenants not to sue, or other

agreements concerning the patents-in-suit or related patents, and Request No. 19 seeks all agreements with any defendant sued on the patents-in-suit or related patents. (Id., Exh. A, pg. 7). In its initial responses, Etagz refused to provide a information or documents responsive to any of these requests, relying instead on vague objections that the information sought was "privileged, protected, proprietary, and/or confidential". (Id., Exh. B, pgs. 9, 12, 14-15). Flambeau initially objected to Etag'z non-production on January 12, 2012. (Id., Exh. C). During several subsequent calls, Flambeau's counsel requested that Etagz produce the requested information. (Id. at ¶ 6).

After raising the issue by phone, Flambeau renewed its request in writing in a June 13, 2012 meet and confer email, in which Flambeau cited controlling Federal Circuit law as to the relevance of patent licensing agreements to the reasonable royalty calculation. (Id. at ¶ 7, Exh. D). Etagz maintained its refusal to produce licensing agreements in a July 6, 2012 letter, in which Etagz relied on non-controlling authority purporting to show that "third party licensing agreements [are] covered by the attorney-client privilege." (Id., Exh. E, pg. 2). In a last-ditch effort to head off unnecessary motion practice, counsel for Flambeau sent another letter on July 25, 2012, explaining that licensing agreements are directly relevant to the reasonably royalty calculation and not subject to any evidentiary privilege under controlling Federal Circuit law. (Id., Exh. F, pgs. 2-3). After sending the July 25, 2012 letter, during additional telephonic meet-and-confer, Flambeau offered to limit the scope of its request to finalized, executed settlement and licensing agreements as to the specific patents-in-suit, which offer was memorialized in an

email of July 27, 2012.  (Id., Exh. G).   In an August 4, 2012 letter, Etagz refused to produce even this limited subset of the documents requested by Flambeau.  (Id., Exh. H).

Fact discovery closes on August 31, 2012, and the dispositive motion deadline is September 14, 2012.  (Dkt., #144).   As of the date of this motion, Etagz has produced no documents or information responsive to Interrogatory No. 7 or Request Nos. 8, 18 or 19.   Etagz has also never produced a privilege log.  (Curley Decl., ¶ 13).

**A.     Flambeau is entitled to executed licenses and settlement agreements for the Patents-in-Suit.**

Fed. R. Civ. P. 26(b)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  "Relevant information may not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.   Relevance is construed broadly, and a request for discovery is considered to be relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.  Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 652 (D. Kan. 2004).   In the specific context of the issues presented in this motion, courts have held that patent licenses and settlement agreements are discoverable, even if the information contained therein may ultimately prove to be inadmissible.  See High Point Sarl v. Sprint Nextel Corp., No. 09–2269–CM–DJW, 2012 WL 1533213 at *8 (D. Kan. April 30, 2012); Trading Technologies International, Inc. v. eSpeed, Inc., No. 04 C 5312, 2007 WL 704525, at *1 (N.D. Ill. Mar. 1, 2007).

35 U.S.C. §284 provides that the Court shall award a successful patent claimant "damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer."  As Etagz has stated, "Etagz does not sell products, but licenses rights to use the '332, '502 and '686 patents."  (Curley Decl., Exh. E, pg. 2).  Accordingly, Etagz is not entitled to compensatory damages in the form of lost profits, and is limited to seeking a reasonable royalty for Flambeau's use of the patents-in-suit. Reasonable royalty damages are determined according to the "'hypothetical negotiation' or the 'willing licensor-willing licensee' approach, [which] attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed. Cir. 2009).  "A comprehensive (but unprioritized and often overlapping) list of relevant factors considered in arriving at a reasonable royalty calculation appears in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)."  ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869  (Fed. Cir. 2010).  A number of these factors go directly to the discovery sought by Flambeau:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

> 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit…

> 12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions…

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement…

Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).

Courts in patent matters have consistently found that documents in the first category, licenses and settlement agreements related to the patents-in-suit, are discoverable, because they may be relevant to the first Georgia Pacific factor: an established royalty for the patents-in-suit. "The first Georgia-Pacific factor requires considering past and present royalties received by the patentee `for the licensing of the patent in suit, proving or tending to prove an established royalty.'" ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010) (quoting Georgia-Pacific, 318 F. Supp. at 1120).   Accordingly, licenses for the patents-in-suit are routinely discoverable.  See Bally Technologies, Inc. v. Business Intelligence Systems Solutions, Inc., No. 2:10–cv–00440–PMP–GWF, 2011 WL 3892221 at *3 (D. Nev. Aug. 30, 2011) ("actual license agreements, negotiated at armslength, regarding the patents-in-suit,…is the best evidence on which to establish a reasonable royalty rate."); Charles Hill & Associates, Inc. v. ABT Electronics, Inc., No. 2:09-cv-0033-JRG, 2012 U.S. Dist. LEXIS 47995 at *6 (E. D. Tex. April 4, 2012) ("signed licenses relating to the same patents-in-suit are accepted as a valuable source for calculating a reasonable royalty…")

Some courts historically viewed licenses negotiated as part of settlements to end litigation to be less probative of a reasonable royalty than licenses negotiated outside the litigation context. See Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79 (Fed. Cir. 1983).  Recently, however, the Federal Circuit has held that license agreements entered into to settle litigation can

be the "most reliable" evidence going to a reasonable royalty.  ResQNet.com, Inc. v. Lansa, Inc.,

594 F.3d 860, 862 (Fed. Cir. 2010).    Thus, the current teaching of the Federal Circuit

"appropriately recognize[s] that settlement agreements can be pertinent to the issue of reasonable

royalties."  In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012) citing ResQNet.com, Inc. v.

Lansa, Inc., 594 F.3d 860, 869-73 (Fed. Cir. 2010).   The discovery of settlement licenses is of

particular importance in cases, like this one, where the patentee's business is to litigate, which

means that the only licenses available are part of settlement agreements.  Clear with Computers,

LLC v. Bergdorf Goodman, Inc., 753 F.Supp.2d 662, 664 (E.D. Tex. 2010) ("in this case, the

settlement agreements will likely be the only licenses of the patents-in-suit, making an accurate

understanding of them more important.  CWC's business is to litigate and license the patents; it

does not compete with Defendants in the marketplace.")  accord Charles Hill, 2012 U.S. Dist.

LEXIS 47995 at *8-9.

Applying this guidance, courts have held that litigation settlement agreements including

licenses are discoverable.   See Atmel Corp. v. Authentec, Inc., No. C06–02138, 2008 WL

276393 *1–2 (N.D.Cal. Jan.31, 2008) (holding that settlement agreements containing licenses

were, at a minimum, relevant to damages); Delphi Auto. Systems, LLC v. Vehicle Occupant

Sensing Systems, LLC, No. 10-10886, 2011 U.S. Dist. LEXIS 42236 at *3, (E.D. Mich. April

19, 2011) (holding that "[t]he Plaintiffs' request for documents related to the two prior

settlements seeks clearly relevant information under ResQNet.com and the other cases cited

above" and noting the existence of a protective order to safeguard licensee confidentiality);

Charles Hill, 2012 U.S. Dist. LEXIS 47995 at*6 ("signed licenses relating to the same patents-

in-suit are accepted as a valuable source for calculating a reasonable royalty."); <u>DataTreasury</u>

<u>Corp. v. Wells Fargo & Co.</u>, No. 206CV72, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010)

(holding licenses negotiated to end litigation admissible for "essentially all purposes" and that

"concerns about the reliability of litigation-related licenses are better directed to weight, not [to]

admissibility."); <u>Automated Merchandising Systems v. Crane Co.</u>, 279 F.R.D. 366, 372 (N.D. W.

Va. 2011) (holding that litigation licenses "should be discoverable so that parties can establish a

factual basis for a reasonable royalty" even if ultimately inadmissible).

**B.      No privilege justifies withholding the documents and information sought.**

Etagz has raised a number of boilerplate objections and vague claims of "privilege".

None of these objections justifies withholding the discovery Flambeau needs to calculate a

reasonable royalty.

Etagz's privilege claim appears to have evolved during meet and confer.  In its initial

discovery responses of December 30, 2011, Etagz merely asserted that the documents and

information sought by Flambeau was "privileged", without identifying the privilege.  (Curley

Decl., Ex. B, pgs. 9, 12, 14-15).  In its July 6, 2012 meet-and-confer letter, Etagz asserted that

third party licensing agreements are "covered by the attorney-client privilege and the work

product doctrine".  (<u>Id</u>., Exh. E, pg. 2).  In that same letter, Etagz seems to suggest that

settlement documents are protected by a settlement privilege based on some public policy in

favor of promoting settlement.  <u>Id</u>.  In its August 3, 2012 meet-and-confer letter Etagz again

asserts an unspecified "privilege", but partially recites the elements of the attorney work product

doctrine.  (Curley Decl., Exh. H, pg. 1).   However these "privileges" are characterized, they do not shield the inarguably relevant documents sought by Flambeau from discovery.

> *1.*      The attorney-client privilege does not apply to documents exchanged with third parties.

The party asserting a privilege bears the burden of establishing its applicability.  See In re Grand Jury Proceedings, 616 F.3d 1172, 1183, 1185 (10th Cir. 2010).  This is not a burden that Etagz has even tried to carry.  For example, Etagz has failed to provide a privilege log, as required by Fed. R. Civ. P. 26(b)(5), from which Flambeau (or the Court) could asses the applicability of the privilege to specifically identified documents.  (Curley Decl., ¶ 13).  Given the unquestionable relevance of the documents at issue, the Court should order production on this basis alone.

Etagz cannot establish the privilege since licensing and settlement agreements executed with third parties cannot possibly be privileged.   "The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client," exchanged for the purpose of obtaining legal advice.  In re Grand Jury Subpoenas, 906 F.2d 1485, 1492 (10th Cir. 1990) (emphasis added).  Here, Flambeau is seeking licenses and settlement agreement that have been executed with third parties, that is, documents that have been exchanged between Etagz and third parties.  Such documents cannot, by definition, be confidential communications between an attorney and client.  In re Qwest Communications Intern. Inc., 450 F.3d 1179, 1185 (10th Cir. 2006) (holding that the attorney client privilege protects only communications between the client and the attorney made in confidence.)  To the extent that the withheld

documents were, at some point, the subject of privileged communications between Etagz and its attorneys, the privilege as to those documents was waived when they were disclosed to third party licensees.   United States v. Ary, 518 F.3d 775, 782 (10th Cir. 2008) ("Because confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party.")

        *2.*      The attorney work product protection does not apply.

"The party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable. . . . A mere allegation that the work product doctrine applies is insufficient."  Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).  To carry this burden, Etagz must specifically establish the protection for each document, and must submit examples for *in camera* review.  See IFreedom Direct Corp. v. First Tennessee Bank Natl. Assn., No. 2:09-cv-205-DN-PMW, 2012 U.S. Dist. LEXIS 98714 at *10, (D. Utah July 16, 2012) citing In re Grand Jury Proceedings, 616 F.3d at 1186.  Here, as is set forth above, Etagz has not even attempted to meet this burden, for example, by supplying a privilege log identifying each withheld document and describing how the work product protection applies.

Etagz does not try to establish the work product protection because any such effort would be futile.  The work product doctrine protects documents and tangible things prepared in anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3).  As a threshold matter, there is no evidence that Etagz, or their attorneys, prepared all of the documents responsive to Flambeau's requests.  Some of them may well have been prepared by third party licensees.  Additionally, for work product protection to apply, litigation must be more than a speculative possibility.  "Work

product protection extends to the production of material assembled by an attorney in preparation for *impending* litigation.  United States v. Ary, 518 F.3d at 783 (internal quotation omitted) (emphasis added).  "Although litigation need not have commenced in order for the work product doctrine to apply, 'there must be more than a remote possibility of litigation.'"  C&C Jewlery Mfg. v. West, No. C09-01303 JF (HRL), 2010 U.S. Dist. LEXIS 110587 *4 (N.D. Cal. Oct. 7, 2010) quoting Conner Peripherals, Inc. v. Western Digital Corp., No. C93-20117RMW/EAI, 1993 WL 726815 *4 (N.D. Cal. June 8, 1993).  Here, the settlement agreements and licenses sought were not prepared in anticipation of *impending* litigation, which is why courts routinely decline to apply the work product protection to such documents.  See C&C Jewelry Mfg., 2010 U.S. Dist. LEXIS 110587 *5 (rejecting applicability of the work product protection to patent licenses granted to third parties because the patentee presented no evidence that "at the time the agreements were prepared, future patent litigation was anything more than a mere possibility.");  Minebea Co., Ltd. V. Papst, 228 F.R.D. 34, 36 (D. D.C. 2005) ("[T]his Court has already rejected Papst's argument that all license negotiations are in anticipation of litigation and therefore constitute work product.")

Moreover, even if the work product protection attached to the settlement agreements and licenses at some point, Etagz waived this protection when it exchanged those documents with adverse parties.  "The protection provided by the work product doctrine is not absolute, and it may be waived."  In re Qwest, 450 F.3d at 1186.  "The work product privilege may be waived by the voluntary release of materials otherwise protected by it."  Grace United Methodist v. City of Cheyenne, 451 F.3d 643, 668 (10th Cir. 2006) quoting Simmons, Inc. v. Bombardier, Inc., 221

F.R.D. 4, 8 (D.D.C. 2004).  Finalized and executed license agreements and settlements must necessarily have been exchanged and approved by third parties.  If any such documents were once work product, the protection no longer applies.  See Minebea Co., Ltd. V. Papst, 228 F.R.D. at 37 (holding that transmission of otherwise protected work product to adverse parties waives the privilege).

> 3.      There is no "settlement privilege.

To the extent that Etagz is asserting the "settlement agreement" privilege established by the 6th Circuit in Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976 (6th Cir. 2003), many District Courts have concluded that that privilege did not survive ResQNet, at least as applied to patent licenses and settlement agreements.  See Delphi Auto Systems, 2011 U.S. Dist. LEXIS 42236 at *3; Tyco Healthcare Group., 2010 U.S. Dist. LEXIS 18253 at *6 ("[ResQNet] causes the Court to shift its approach [away from Goodyear] toward the discoverability of settlement negotiations.")  Recently, the Federal Circuit eliminated all doubt on the issue in In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012).  In that case, the Federal Circuit found that Federal Circuit law applies when "determining whether a privilege or other discovery limitations protect disclosure of information related to reasonable royalties because that issue implicates the jurisprudential responsibilities of this court within its exclusive jurisdiction".  In Re MSTG, Inc., 675 F.3d at 1341.  After weighing whether to adopt a new privilege under Fed. R. Evid. 408, the Court concluded that "in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege." Id. at 1348.

     *4.*     The authorities cited by Etagz do not justify withholding relevant documents.

In its meet and confer letter of July 6, 2012 (Curley Dec., Exh. E) Etagz cites <u>Roberts v. Owens-Corning Fiberglass Corp.</u>, 101 F.Supp.2d 1076 (D. Ind. 1999) for the proposition that the confidentiality of settlement agreements should be maintained to advance the public interest in settlement.   This reasoning should not control here, for a number of reasons.   First, in the patent context, the Federal Circuit has already ruled that no such settlement privilege exists.   <u>In re MSTG, Inc.</u>, 675 F.3d at 1348.   Second, the public's interest in confidentiality of settlement agreements should not outweigh Flambeau's interest in conducting discovery on damages. Third, the public is discouraged from engaging in settlement agreements only when such agreements become public.   Here, a stipulated protective order exists to preserve third party confidentiality.

Etagz cites <u>Softview Computer Products Corp. v. Haworth, Inc.</u>, 2000 WL 351411, No. No. 97 Civ. 8815 KMWHBP  at *13 (S.D.N.Y., March 31, 2000) for the proposition that third-party patent licensing agreements are protected by the attorney-client privilege and attorney work product doctrine.   <u>Softview Computer</u> does not stand for this proposition.   Rather, the Court in <u>Softview Computer</u> found that documents exchanged between a client and the *client's attorney* during settlement and licensing negotiations were protected as privileged or work product. Accordingly, the <u>Softview Computer</u> court prevented discovery of documents "insofar as they are communications regarding negotiations and anticipated litigation strategy, *and contain client confidences*." <u>Id</u>. (Emphasis added).  Documents that were exchanged between Etagz and third-

party licensees or patent infringement defendants cannot, by definition, contain client *confidences*, and therefore cannot be subject to the attorney-client privilege.

The remainder of Etagz's boilerplate objections are addressed below as part of Flambeau's Local Rule 37-1(b) statement.  None of them justify withholding the highly relevant documents Flambeau needs for its case.

**C.    Etagz's remaining objections are unreasonable.**

In accordance with Local Rule 37-1(b), Flambeau provides the following listing of the discovery requests at issue, the responses to the requests to which objections are made, and a succinct statement, separately for each objection, summarizing why the response received was inadequate.

Interrogatory No. 7:

"Identify all licenses, offers to license, settlement agreements, covenants not to sue, and supplier agreements relating the patents-in-suit, any of the related patents, and any products you contend are covered by the same."

Etagz's Objections to Interrogatory No. 7

"Plaintiff objects on the basis that this Interrogatory is a compound request, asking more than one question.   Additionally, this Interrogatory seeks information that is privileged, protected, proprietary and/or confidential."

Etagz's Objections are Unreasonable

Etagz's objection that Interrogatory No. 7 is "compound" is not well taken.  Fed. R. Civ. P. 33(a)(1) allows compound interrogatories, so long as the total number of interrogatories,

including discrete subparts, does not exceed 25.  See 7-33 Moore's Federal Practice - Civil §

33.31 ("The individual questions in a set of interrogatories may contain subparts.")  To the extent

that Etagz's objection is that the discrete subparts of Interrogatory No. 1 put Flambeau over its 25

interrogatory limit (e.g., because the information concerns multiple claim elements and multiple

accused products), this objection is also unfounded.    [I]nterrogatories with several subparts

properly count as a single interrogatory when those interrogatories do not seek information about

discrete separate subjects and instead, relate to a common theme.  See  Flying J. Inc. v. TA

Operating Corporation, No. 1:06cv00030 TC., 2008 WL 4169818  at *2-3, (D.Utah, Sept. 2,

2008).  Here, Interrogatory No. 7 is directed to a single theme: information about agreements

Etagz has reached with other parties about the patented technology.

        Etagz's remaining objections should be disregarded.  To the extent that the interrogatory

seeks "proprietary" and "confidential" information, the parties have entered into a stipulated

protective order specifically to protect such information from undue disclosure.  See Delphi Auto

Systems, 2011 U.S. Dist. LEXIS 42236 at *3 (holding that "[t]he Plaintiffs' request for

documents related to the two prior settlements seeks clearly relevant information under

ResQNet.com and the other cases cited above" and noting the existence of a protective order to

safeguard licensee confidentiality).

        As to its privilege objection, Etagz fails to either identify the "privilege" being asserted

with respect to Interrogatory No. 7,  or establish it.  Since Interrogatory No. 7 seeks the

identification of agreements with third parties, the information sought cannot be either privileged

or attorney work product.  United States v. Ary, 518 F.3d 775, 782 (10th Cir. 2008) ("Because

confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party.")  Moreover, to the extent that Etagz is asserting a "settlement agreement" privilege, no such privilege exists.  <u>In re MSTG, Inc.</u>, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("[t]herefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege.")

<u>Request for Production No. 8:</u>

"Produce all documents related to any licenses for patents Plaintiff has given or have."

<u>Etagz's Objections to Request No. 8:</u>

"Plaintiff objects on the basis that this Request seeks documentation that is privileged, protected, proprietary and/or confidential."

<u>Etagz's Objections are Unreasonable</u>

To the extent that the Request seeks "proprietary" and "confidential" documents, the parties have entered into a stipulated protective order specifically to protect such information from undue disclosure to in-house personnel and third parties.  <u>See Delphi Auto Systems</u>, 2011 U.S. Dist. LEXIS 42236 at *3 (holding that "[t]he Plaintiffs' request for documents related to the two prior settlements seeks clearly relevant information under <u>ResQNet.com</u> and the other cases cited above" and noting the existence of a protective order to safeguard licensee confidentiality).

As to its privilege objection, Etagz fails to either identify the "privilege" being asserted with respect to Request No. 8,  or establish it.  Since Request No. 8 seeks the documents related to patent licenses granted by Etagz to third parties, many documents sought by the Request

cannot be subject to the attorney-client privilege or the attorney work product protection.  United States v. Ary, 518 F.3d 775, 782 (10th Cir. 2008) ("Because confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party.")  Moreover, to the extent that Etagz is asserting a "settlement agreement" privilege, no such privilege exists.  In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("[t]herefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege.")

Request for Production No. 18

"Produce all licenses, settlement agreements, covenants not to sue, supplier agreements or other agreements concerning the patents-in-suit or any related patents."

Etagz's Objections to Request No. 18

"Plaintiff objects on the basis that this Request seeks documentation that is privileged, protected, proprietary and/or confidential."

Etagz's Objections are Unreasonable

To the extent that the Request seeks "proprietary" and "confidential" documents, the parties have entered into a stipulated protective order specifically to protect such information from undue disclosure to in-house personnel and third parties.  See Delphi Auto Systems, 2011 U.S. Dist. LEXIS 42236 at *3, (E.D. Mich. April 19, 2011) (holding that "[t]he Plaintiffs' request for documents related to the two prior settlements seeks clearly relevant information under

-17-

ResQNet.com and the other cases cited above" and noting the existence of a protective order to safeguard licensee confidentiality).

      As to its privilege objection, Etagz fails to either identify the "privilege" being asserted with respect to Request No. 19, or establish it.  Since Request No. 19 seeks executed licenses and other agreements with third parties, the documents sought by the Request cannot be subject to the attorney-client privilege or attorney work product protection.  United States v. Ary, 518 F.3d 775, 782 (10th Cir. 2008) ("Because confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party.") Moreover, to the extent that Etagz is asserting a "settlement agreement" privilege, no such privilege exists.  In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("[t]herefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege.")

Request for Production No. 19

      "Produce all agreements with any defendant that has ever been sued by Etagz for infringement of the patents-in-suit or any related patents."

Etagz's Objections to Request No. 19

      "Plaintiff objects on the basis that this Request seeks documentation that is privileged, protected, proprietary and/or confidential."

Etagz's Objections are Unreasonable

      To the extent that the Request seeks "proprietary" and "confidential" documents, the parties have entered into a stipulated protective order specifically to protect such information

from undue disclosure to in-house personnel and third parties.  See Delphi Auto Systems, 2011 U.S. Dist. LEXIS 42236 at *3 (holding that "[t]he Plaintiffs' request for documents related to the two prior settlements seeks clearly relevant information under ResQNet.com and the other cases cited above" and noting the existence of a protective order to safeguard licensee confidentiality).

As to its privilege objection, Etagz fails to either identify the "privilege" being asserted with respect to Request No. 18,  or establish it.  Since Request No. 18 seeks executed licenses and other agreements with third parties, the documents sought by the Request cannot be subject to the attorney-client privilege or attorney work product protection.  United States v. Ary, 518 F.3d 775, 782 (10th Cir. 2008) ("Because confidentiality is critical to the privilege, it will be lost if the client discloses the substance of an otherwise privileged communication to a third party.") Moreover, to the extent that Etagz is asserting a "settlement agreement" privilege, no such privilege exists.  In re MSTG, Inc., 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("[t]herefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege.")

## III.   FLAMBEAU IS ENTITLED EXPENSES INCURRED IN BRINGING THIS MOTION

Fed. R. Civ. P. 37(a)(5) mandates the payment of reasonable expenses, including attorney's fees, for a successful motion to compel, unless (1) the moving party failed to meet-and-confer, (2) the opposing party's non-production was substantially justified or (3) other circumstances make the award unjust.  Fed. R. Civ. P. 37(a)(5)(A).  None of these exceptions apply in this case.  First, Flambeau engaged in extensive meet-and-confer in an effort to resolve

this dispute without the assistance of the Court.  Second, there is no substantial justification for

Etagz's assertion of privilege in documents that were exchanged with third party adversaries.

Rather than being a close question, on which "reasonable people could differ," Etagz's refusal to

produce relevant information is clearly unreasonable.  See Pierce v. Underwood, 487 U.S. 552,

565 (1988).  Finally, there are no other circumstances that would make an award of expenses

unjust.  Accordingly, Flambeau hereby requests that the Court award Flambeau its expenses in

connection with this motion pursuant to Fed. R. Civ. P. 37(a)(5).

## IV.    **CONCLUSION**

As the discovery sought by Flambeau is relevant and appropriate, Flambeau's motion

should be granted.

Respectfully submitted this 15th day of August
2012.

/s/ David M. Bennion
DAVID M. BENNION
PARSONS BEHLE & LATIMER

Anthony A. Tomaselli
aat@quarles.com
Josephine K. Benkers
Josephine.benkers@quarles.com
Michael J. Curley
michael.curley@quarles.com
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, Wisconsin 53703-3095
Tel: (608)251-5000
Fax: (608) 251-9166

**Attorneys for Flambeau, Inc.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the forgoing was served on all counsel of record who are deemed to have consented to electronic service, via the Court's ECF System under Local Rule CV-5(a)(3)on August 15, 2012.

*/s/David M. Bennion*